## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re, | Case No. 14-05007-dd |
| Robin Gilbert Crump, | Chapter 11 |
| | **ORDER** |
| Debtor. | |

This matter comes before the Court to consider confirmation of a chapter 11 plan filed by debtor Robin Gilbert Crump ("Crump" or "Debtor") on November 17, 2014, as amended February 9, 2015. Creditor Ameris Bank, successor-in-interest by merger to Coastal Bank ("Ameris Bank"), objects to confirmation and voted to reject the plan. The Court held a preliminary confirmation hearing on the plan on March 24, 2015 and continued the hearing to April 21, 2015 so that the parties could provide the Court with supplemental briefs. After careful consideration of the law, arguments of counsel, and evidence submitted, the Court sustains Ameris Bank's objection.

### I.      Facts and Procedural History

Crump filed for protection under chapter 11 of the Bankruptcy Code on September 3, 2014. She scheduled a parcel of real property jointly owned with her husband at 940 Joe Rivers Road, Charleston, South Carolina valued at $800,000. The property is encumbered by a first mortgage in favor of Ameris Bank. Ameris Bank filed a proof of claim for $1,846,408 on January 8, 2015. The loan documents attached to the proof of claim show that the loan was originally secured by a first mortgage on the Joe Rivers Road property and a second mortgage on real property located at Broughton Road in Charleston. The principal balance was originally $1,850,000 and the promissory note carries an interest rate of 4.5%. The note requires interest-only payments until maturity on March 25, 2012. The mortgage was signed by the Crump and her husband on March 26, 2009. The parties do not dispute that the loan matured pre-petition, is due in full, and has not

1

been paid. The parties also do not dispute that the lien on the Broughton Road property was released in July 2010.

The Debtor timely filed a plan of reorganization and amended the plan shortly prior to the first confirmation hearing. Relevant here is the plan's proposed treatment of Ameris Bank's claim. Class 2 of the plan proposes to "cure" the Ameris Bank loan. It divides the loan into secured and unsecured portions. With regards to the secured claim, which the Debtor values at $1,260,000, the plan provides for monthly payments of $6,385 for forty-eight months. At the end of the forty-eight months, the Debtor will pay the remaining balance on both the secured and unsecured portions of the loan. Ameris Bank retains its right to foreclose on the property in the event of default throughout the duration of the plan. Any deficiency arising from foreclosure is accounted for in class 12 of the plan, and would receive the same fifteen percent payment over ten years as the other unsecured creditors. Both classes are impaired.

Ameris Bank objects to the plan on the grounds that, *inter alia*, this treatment is not permissible under the Code. Ameris Bank argues that because its claim is secured by the Debtor's principal residence, 11 U.S.C. § 1123(b)(5)[1] bars the plan from providing for modification of its claim. Debtor originally stipulated that the claim was secured only by the Debtor's principal residence, but now argues that § 1123(b)(5)'s anti-modification provision is not applicable here because the claim was originally secured by collateral in addition to the Debtor's principal residence. Even if § 1123(b)(5) does apply, the Debtor argues the plan treatment of the claim is not a modification but rather a permissible cure or waiver of default pursuant to § 1123(a)(5)(G). The parties submitted briefs in support of their respective positions.

---

[1] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be by section number only.

## II.    Discussion

Section 1123(b)(5) provides that a chapter 11 plan may modify the rights of holders of secured claims unless the claim is secured only by an individual debtor's principal residence. Ameris Bank argues that this provision applies to its claim and that the plan impermissibly proposes to modify its rights. The Debtor argues that the provision does not apply and, regardless, the Code permits the plan's proposed treatment. As it must, the Court considers first the applicability of the section before turning to whether the proposed treatment is proper.

*A.  Whether Ameris Bank's Claim is Subject to Modification[2]*

The Debtor first argues that § 1123(b)(5) is not applicable to Ameris Bank's claim because the lien was originally secured by collateral in addition to the principal residence. Ameris Bank argues that because the lien on the additional collateral was extinguished prior to the date of the filing of the petition, its claim is secured solely by the principal residence. The Court agrees with Ameris Bank.

Any analysis of a statute must begin with the plain language. *See Milavetz, Gallop & Milavetz, P.A. v. U.S.*, 559 U.S. 229, 236 (2010). Section 1123(b)(5)[3] provides that a plan may:

> Modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence … .

---

[2] The dispute over whether Ameris Bank's claim is secured solely by the Debtor's principal residence was not brought to the Court's attention until the parties filed their supplemental briefs. In fact, at the March hearing, the Debtor conceded that the claim was secured solely by the Debtor's principal residence, and that the dispute in this case was over whether the proposed treatment of the claim was a modification. The Court would also note that the original plan and the amended plan both state that the claim is secured solely by the Debtor's personal residence. Nevertheless, the Court considers the argument.

[3] This section was added to the Bankruptcy Code in 1994 to conform "the treatment of residential mortgages in chapter 11 to that in chapter 13." 140 Cong. Rec. H10,752, H10,767 (daily ed. Oct. 4, 1994). Its language is identical to the language in § 1322(b)(2), the chapter 13 anti-modification provision. Accordingly, this Court will look to case law discussing either § 1123(b)(5) or § 1322(b)(2) for guidance.

3

By its terms, § 1123(b)(5) allows debtors to propose modifications of claims, other than those secured by the debtor's principal residence. Claims are generally determined as of the date of the filing of the petition. *See* 11 U.S.C. § 502(b). A claim is defined broadly for bankruptcy purposes as a "right to payment," 11 U.S.C. § 101(5)(A), and is classified as secured or unsecured. 11 U.S.C. § 506(a). Claims are deemed "allowed," that is, enforceable in the bankruptcy case, except to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law … ." 11 U.S.C. § 502(b)(1). The determination of claim allowance therefore requires a court to consider the claim in the context of the applicable nonbankruptcy law; here, South Carolina law.[4] *Travelers Cas. and Sur. Co. of Am. v. Pac. Gas and Elec. Co.*, 549 U.S. 443, 450 (2007) ("[W]hen the Bankruptcy Code uses the word 'claim' … it is usually referring to a right to payment recognized under state law.").

Ameris Bank has a claim. It is presently secured only by the Debtor's principal residence. The mortgage documents show that Ameris Bank's claim was originally also secured by a second mortgage on the Broughton Road property. However, Ameris Bank released its right to enforce its lien against the Broughton Road property. A release is generally defined as "the act of giving up a right or claim to the person against whom it could have been enforced." Black's Law Dictionary (9th ed. 2009). South Carolina law permits the "release of a portion of any mortgaged interest in real property from the lien of the mortgage." S.C. Code Ann § 29-3-470 (1976). Thus, upon the release of the Broughton Road property, Ameris Bank no longer had any rights or interest with regards to that property. Ameris Bank's lien presently extends only to the Joe Rivers Road

---

[4] Paragraph 16 of the mortgage states that the law governing the document shall be the law in the jurisdiction where the property is located. Claim 12-1. The property is located in South Carolina.

property: the principal residence of the Debtor. Its claim is secured only by a security interest in

real property that is the Debtor's principal residence.

The Debtor disagrees with this analysis. She argues that because the original security

agreement encumbered two parcels of property, Ameris Bank's claim is not one secured solely by

the principal residence. This proposition has support in the case law.[5]

Courts holding that the loan documents determine whether the claim is secured solely by

the principal residence focus on the use of the phrase "security interest" in the statute.  They note

that the Code defines security interest as a "lien created by agreement" without reference as to

whether or not that agreement is enforceable. 11 U.S.C. § 101(51); *In re Larios*, 259 B.R 675, 678

(Bankr. N.D. Ill. 2001); *In re Howard*, 220 B.R. 716, 718 (Bankr. S.D. Ga. 1998). These courts

conclude that because this definition is so broad, if the security agreement covers more than the

debtor's principal residence, then the loan is modifiable. *Larios*, 259 B.R. at 679 (finding support

for this position from the legislative history showing the anti-modification provision was enacted

to protect the lender whose only collateral is the traditional home mortgage). If there is a later

change resulting in the lender being no longer secured by the additional collateral, then "the

mortgagee is at its peril" for not changing the documents. *In re Scarborough*, 461 F.3d 406, 410 -

---

[5] This issue has resulted in a fair amount of litigation in the courts, with conflicting commentary over what constitutes the majority view. One chapter 13 treatise states that the current "trend" in chapter 13 case law is to look to the date of the security agreement to determine whether the claim is secured solely by the principal residence, and that "until recently," the majority view looked to the petition date. Keith M. Lunden & William H. Brown, Chapter 13 Bankruptcy, 4th ed. § 121.2, Sec. Rev. Apr. 11, 2011, www.ch13online.com, (last accessed April 16, 2015). However, a closer look at the cases cited in that treatise show that the case law is split evenly between those courts that look to the petition date and those that look to the date of the security agreement. The Court would further note that since the last revision date of that treatise, the Ninth Circuit Bankruptcy Appellate Panel has held that the petition date controls under both the §§ 1123(b)(5) and 1332(b)(2) analysis. *In re Benafel*, 461 B.R. 581 (B.A.P. 9th Cir. 2011); *In re Abdelgadir*, 455 B.R. 896 (B.A.P. 9th Cir. 2011). Another treatise notes that there are multiple conflicting lines of authority, some looking at the petition date, some the date of the loan documents, some the date of confirmation, and others using "a discretionary approach which defies any predictability." 8 Collier on Bankruptcy ¶ 1322.06[1][a] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2011) ("Collier's). In the context of chapter 11, Collier's states that the determinative date is the petition date. *Id*. at ¶ 1123.02.

12 (3d Cir. 2006) (holding that a claim secured by both the debtor's principal residence and income-producing properties [a multifamily unit] is subject to modification). These courts note that at the time the loan is made, lenders determine their exposure and how best to protect themselves. *Id*. at 412. Considered among these risks is whether the loan would be modifiable in a bankruptcy case. *In re Proctor*, 494 B.R. 833, 840 (Bankr. E.D.N.C. 2013). Creditors choosing to secure their loans with additional collateral should not be also be protected by an anti-modification provision. *Id*. They bargained for a modifiable loan and protected themselves accordingly. *Id*.

Other court criticize this analysis as improperly "focus[ing] on sub-phrases" and considering policy implications when the language of the statute is clear. *In re Abdelgadir*, 455 B.R. 896, 903 (B.A.P. 9th Cir. 2011). This Court agrees. The language of the statute bars modification of "a *claim* secured only by a security interest in real property." 11 U.S.C. § 1123(b)(5) (emphasis added). "Unless some federal interest requires a different result," these claims are analyzed under state. 11 U.S.C. § 502(b)(1); *Butner v. U.S.*, 440 U.S. 48, 55 (1979) ("The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests … ."). Considering only the initial loan documents without regard to the present rights of the parties under state law is contrary to that mandate. If a creditor has released its other lien rights prior to the bankruptcy, the claim is secured only by the debtor's principal residence inside the bankruptcy.

The Supreme Court has cautioned against construing statutes in a manner that would eliminate or rend superfluous certain words. *E.g. Walters v. Metro. Educ. Enters. Inc.*, 519 U.S. 202, 209 (1997) ("Statutes must be interpreted, if possible, to give each word some operative effect."). Reading the statute as the Debtor suggests considers only the "security interest" instead

of the "claim secured … by a security interest." Considering the security interest in connection

with the creditor's rights under state law permits the Court to consider the statute as a whole.

Ameris Bank's claim is secured solely by the Debtor's principal residence. Ameris Bank no longer

had a right under state law to enforce its lien against any other property. Its lien therefore falls

within § 1123(b)(5)'s anti-modification provision.[6]

### B.  Whether the Proposed Treatment is a Modification

Ameris Bank's rights as to its secured claim are not modifiable. However, the Debtor

argues that she is not proposing to modify the loan but rather to cure it, as is permissible under §

1123(a)(5)(G). Again, the Court explores chapter 13 case law regarding similar chapter 13

provisions.

In the context of chapter 13, the Fourth Circuit notes a distinction between modifying

creditor rights and curing a default. *Litton v. Wachovia Bank, et al. (In re Litton)*, 330 F.3d 636,

643 (4th Cir. 2003). A modification of a loan is a "fundamental alteration in a debtor's obligations,

e.g., lowering monthly payments, converting a variable interest rate to a fixed interest rate, or

extending the repayment terms of a note." *Id*. In contrast, "a 'cure' merely reinstates a debt to its

pre-default position, or it returns the debtor and creditor to their respective positions before the

default." *Id*. at 644. A cure will "remedy or rectify the default and restore matters to the status quo

ante." *In re Matter of Clark*, 738 F.2d 869, 872 (7th Cir. 1984). Thus, the *Litton* debtors were

---

[6] Many of the cases discussing what date controls the right to propose modifications of creditor rights consider fact patterns where the debtor changed his or her use of the property, *e. g. Proctor*, 494 B.R. at 834 – 35 (considering whether the rights of a claim secured by property originally purchased as a second residence but used as a principal residence as of the petition date were modifiable), the property contained multifamily units, *e.g. Lomas Mortg., Inc. v. Louis*, 82 F.3d 1, 4 (1st Cir. 1996) (considering whether a claim secured by a multiunit property in which one of the units was the debtor's principal residence was subject to § 1322(b)(2)); or the property was also used for commercial purposes, *e.g. In re Laycock*, 497 B.R. 396, 399 – 400 (Bankr. S.D.N.Y. 2013) (considering whether property was the debtor's principal residence when it was also zoned as light factory/highway commercial and housed the debtor's business). As those cases deal with use or changes in use as opposed to issues of multiple collateral and state law rights, the Court does not consider them in the context of this decision.

curing rather than modifying the loan on their principal residence when their plan proposed to

reinstate the terms of a previous consent order. *Litton*, 330 F.3d at 641. Because the proposed

treatment did not reduce any of the payments due, did not extend the maturity date, and did not

alter any of the terms under the original consent order, treatment was a permissible cure rather than

an impermissible modification. *Id*. at 645.

Ameris Bank's loan has fully matured. Payment is due in full. The Debtor's proposed plan

treatment extends the term of the loan and the maturity date. It alters the obligations of Crump

under the loan documents. The proposal is a modification, not a mere cure.

The Court finds support for viewing the Debtor's proposed plan as modifying creditor

rights rather than curing a default in the Bankruptcy Code itself. As noted *supra*, § 1123(b)(5) was

added to the Bankruptcy Code to conform chapter 11 treatment of residential home loans to the

treatment of residential home loans in chapter 13 cases. At the same time § 1123(b)(5) was added

to the Code, Congress also added § 1322(c)(2), which states that notwithstanding the anti-

modification provision in chapter 13,

> In a case in which the last payment on the original payment schedule for a claim
> secured only by a security interest in real property that is the debtor's principal
> residence is due before the date on which the final payment under the plan is due,
> the plan may provide for the payment of the claim …

This section carves an exception to the chapter 13 anti-modification provision for home

loans that mature prior to the conclusion of a plan. Absent this provision, extending payments on

a debt that was or became due during the plan repayment period would be barred by § 1322(b)(2).

Although the Debtor argues that § 1123(a)(5)(G) allows her to treat the loan as she proposes,

chapter 13 contains the same provision yet Congress felt the need to add § 1322(c)(2) so debtors

could reinstate, modify, and pay fully matured home loan debt, if only in one narrow way. *In re*

*Clay*, 204 B.R. 786, 792 (Bankr. N.D. Ala. 1996); *In re Haake*, 483 B.R. 524, 534 (Bankr. W.D.

Wis. 2012).[7] Because chapter 11 does not include a provision similar to § 1322(c)(2), the Court

concludes that this chapter 11 plan's modification of a fully matured home loan secured by the

debtor's principal residence by extending the terms and due date is not permitted. The plan

proposes to extend the life of the Ameris Bank loan and significantly alter the payment schedule.

This is barred by § 1123(b)(5).

### III.    Conclusion

The Ameris Bank loan is secured solely by the Debtor's principal residence. The Debtor's

proposed treatment of the loan in the plan is a modification because it alters the payment schedule

and maturity date of the loan. Ameris Bank's objection to the plan is therefore sustained and

confirmation of the plan filed November 17, 2014, as amended on February 9, 2015, is denied.

AND IT IS SO ORDERED.


**FILED BY THE COURT**
**04/16/2015**



Entered: 04/17/2015

David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

---

[7] The Debtor cites *Great Western Bank & Trust v. Entz-White Lumber and Supply, Inc. (In re Entz-White Lumber and Supply, Inc.)*, 850 F.2d 1338 (9th Cir. 1988) in support of her proposition that the plan treatment cures the default of the loan. *Entz-White* is not an individual chapter 11 case, thus the debtor was not subject to the same restrictions, and its reasoning not applicable here. She also cites *Bank of America, N.A. v. Garcia (In re Garcia)*, 276 B.R. 627 (Bankr. D. Ariz. 2002). *Garcia* discussed whether the debtors' could cure a default based on a violation of a due-on-sales provision and is similarly not applicable.